Singh, J.
Plaintiff Federal National Mortgage Association (“Fannie Mae”) brought this action to evict defendant Gary P. Rogers (“Rogers”) from his Malden home of nearly fifty years. Fannie Mae asserted that it had obtained legal title to the property after foreclosure sale and that Rogers had faffed to vacate after notice to quit. Rogers contended that the foreclosure sale was void and that Fannie Mae had violated the consumer protection law (G.L.c. 93A) by failing to provide him with a loan modification under the Federal Home Affordable Modification Program (“HAMP”). Upon Fannie Mae’s motion for summary judgment, the court awarded possession of the property to Fannie Mae. Rogers appeals, contending that the judge erred in granting summary judgment because the foreclosure sale was invalid on a number of grounds and because he had valid defenses and counterclaims. Additionally, he argues that the court relied on inadequate evidence in making its decision. Finally, he argues that the court should not have ruled on summary judgment where Fannie Mae had failed to provide him with discovery necessary to oppose the motion properly.
*69 The grant of summary judgment is reviewed de novo to determine whether, in the light most favorable to the nonmoving party, the undisputed material facts establish that the moving party is entitled to judgment in its favor as a matter of law. Barron Chiropractic & Rehabilitation, P.C. v. Norfolk & Dedham Group, 469 Mass. 800, 804 (2014); Skyhook Wireless, Inc. v. Google Inc., 86 Mass. App. Ct. 611, 618-619 (2014). See Mass. R. Civ. P., Rule 56(c).
On May 30,2008, Rogers and his mother[3] obtained a loan from East Boston Savings Bank. In connection with this loan, Rogers signed a promissory note in favor of East Boston Savings Bank. The promissory note was secured by a mortgage on Rogers’s Malden property; the mortgage was given to Mortgage Electronic Registration Systems (“MERS”) as nominee for East Boston Savings Bank. Shortly thereafter, the servicing of the loan was transferred to the Massachusetts Housing Finance Agency (“Mass Housing”).[4]
On May 1, 2009, February 1, 2010, and September 20, 2010, Mass Housing gave notice that the mortgage was in payment default, that there was a right to cure, and that failing cure, Mass Housing would take steps to foreclose.[5] However, Mass Housing did not hold the mortgage as of any of those dates; it was simply the loan servicer. MERS did not assign the mortgage to Mass Housing until December 14, 2010, after all three notices to cure had been sent.[6] That assignment also purported to assign “the indebtedness currently due and to become due under the terms of any Promissory Note or evidence of indebtedness secured thereby.”[7]
*70 The following year, on October 12, 2011, Mass Housing gave Rogers notice of its intent to foreclose. Rogers did not seek to enjoin the foreclosure or otherwise affirmatively move to challenge it. Fannie Mae purchased the property at auction on November 4,2011.
On March 26, 2012, Fannie Mae filed a summary process action, seeking to evict Rogers. Rogers filed an answer "with affirmative defenses and counterclaims. After some period of discovery and litigation of discovery disputes, Fannie Mae moved for summary judgment, presenting authenticated copies of the mortgage, the assignment of mortgage, the note, and the foreclosure deed with affidavit of sale. Rogers opposed the summary judgment motion and filed a motion to compel further discovery and a motion to strike an affidavit supporting Fannie Mae’s motion for summary judgment On August 9, 2012, the court took the matter under advisement and, later that day, denied Rogers’s motion to compel discovery and motion to strike affidavit and granted Fannie Mae’s motion for summary judgment.
On appeal, Rogers contends that the judge erred in granting summary judgment in favor of Fannie Mae because Fannie Mae had failed to establish that it held legal title to the property. Specifically, he contends that the foreclosure sale at which it purchased the property was void because the notice of right to cure the mortgage default did not comply with either G.L.c. 244, §35A (giving homeowners right to cure mortgage payment default prior to acceleration and foreclosure) or the statutory power of sale in the mortgage instrument.
‘“Legal title is established in summary process by proof that the title was acquired strictly according to the power of sale provided in the mortgage; and that alone is subject to challenge’ (emphasis added).” U.S. Bank Nat’l Ass’n v. Schumacher, 467 Mass. 421, 428 (2014) (Schumacher), quoting Wayne Inv. Corp. v. Abbott, 350 Mass. 775 (1966). Any other claimed deficiencies in the foreclosure process must be raised by an affirmative action in equity, see id. at 429, or by affirmative defense or counterclaim in a postforeclosure summary process action. See Bank of Am., N.A. v. Rosa, 466 Mass. 613, 621-626 (2013) (Rosa). Here, Fannie Mae made a prima facie showing of title by presenting evidence that it had obtained a foreclosure deed with an affidavit of sale, in statutory form, G.L.C. 244, §§14-15, indicating compliance with the power of sale, and that all had been duly recorded. Schumacher, supra at 428, citing Lewis v. Jackson, 165 Mass. 481, 486-487 (1896) (to make prima facie showing of title, proponent need only prove that it obtained deed to property at issue, and that deed and affidavit of sale, showing compliance with power of sale, were duly recorded). See Federal Nat’l Mtge. Ass’n v. Hendricks, 463 Mass. 635, 641-642 (2012) (in summary process action, foreclosure deed and statutory form constitute prima facie evidence of right of possession).
*71 Rogers pointed to no deficiency in Fannie Mae’s prima facie showing. See id. at 642 (if plaintiff makes out prima facie case, it is incumbent on defendant to counter with his own affidavit or acceptable alternative demonstrating at least existence of genuine issue of material fact to avoid summary judgment against him). Instead, he offered the three notice of right to cure letters sent by Mass Housing, before Mass Housing had been assigned the mortgage, to support his contention that the foreclosure sale was void. As the Supreme Judicial Court noted in Schumacher, the issuance of the notice of right to cure letters is not part of the exercise of the power of sale. Id. at 429. Rather, it is a “preforeclosure undertaking that, when satisfied, eliminates the default and wholly precludes the initiation of foreclosure proceedings in the first instance.” Id. at 431. Thus, a deficiency in the notice of right to cure does not go to the issue of whether the plaintiff in summary process acquired title “strictly according to the power of sale provided in the mortgage” — the only issue that is subject to challenge in that proceeding. Id. at 428, quoting Wayne Inv. Corp., supra.
Rogers’s primary argument, that defects in the notice to cure letters violated G.L.c. 244, §35A and therefore invalidated the foreclosure sale, was specifically rejected by Schumacher, which issued after the parties in this case submitted their briefs. Id. at 431. We therefore reject this claim.
With respect to Rogers’s secondary argument, that the foreclosure was invalid because the same notice of right to cure letters did not comply with the power of sale in the mortgage instrument, Rogers argues that paragraph 22 of the mortgage instrument required the “Lender,” identified as “East Boston Savings Bank,” to give Rogers notice of any default and right to cure. Additionally, he argues that paragraph 22 authorized only the Lender, East Boston Savings Bank, to invoke the power of sale. Because the notices were sent by Mass Housing and the power of sale invoked by it, Rogers contends that the foreclosure was void.
Paragraph 22 sets out the Lender’s responsibilities when exercising the power of sale.[8] The mortgage instrument provides that the Lender’s rights, including the right to invoke the power of sale, may be assigned:
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower’s covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby *72 mortgage, grant and convey to MERS (solely as nominee for Lender and Lender’s successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property ...” (emphasis supplied).
Thus, at the time that the mortgage instrument was executed, East Boston Savings Bank conveyed the mortgage, explicitly with power of sale, to MERS, which later assigned it to Mass Housing. Rogers’s contention that the mortgage instrument limited exercise of the power of sale to East Boston Savings Bank, even as it conveyed the same to MERS, is a nonsensical interpretation serving no apparent purpose. See Cadle Co. v. Vargas, 55 Mass. App. Ct. 361, 366 (2002) (interpretation of contract should be rejected if common sense indicates that result would be unreasonable). Mass Housing thus had the authority, according to the power of sale in the mortgage, to invoke the power when it did so.
Furthermore, Rogers did not establish that any defects in the notice to cure letters “rendered the foreclosure so fundamentally unfair that [he] is entitled to affirmative equitable relief, specifically the setting aside of the foreclosure sale ‘for reasons other than failure to comply strictly with the power of sale provided in the mortgage.’” Schumacher, supra at 433 (Gants, J., concurring), quoting Rosa, supra at 624 (where homeowner does not challenge foreclosure in court and finds himself to be defendant in summary process eviction, any claimed defects in notice to cure under G.L.c. 244, §35A must also demonstrate fundamental unfairness).
Here, the only claimed defect was that the notice to cure letters were given by the mortgage servicer before it became the mortgagee; there was no suggestion that Rogers was prevented from exercising his right to cure by this discrepancy. See Haskins v. Deutsche Bank Nat'l Trust Co., 86 Mass. App. Ct. 632, 632-633 (2014) (where homeowner challenged foreclosure prior to it going forward, court held that fact that mortgage servicer, rather than mortgagee, sent notice of right to cure letter did not violate G.L.c. 244, §35A). The obvious purpose of the notice to cure provision of G.L.c. 244, §35A, as well as paragraph 22 of the mortgage, is to allow the borrower opportunity to cure a default. See Haskins, supra at 640 (“evident purpose” of notice required by G.L.c. 244, §35A is to give opportunity to cure default and avoid foreclosure). This purpose was fulfilled by the loan servicer, which was acting on behalf of the mortgagee, giving Rogers the required information. See, by contrast, Federal Home Loan Mtge. Corp. v. LaPorta, 2015 Mass. App. Div._(No. 14-ADMS-10006) (notice under similar mortgage provision given by entity that was at time neither mortgagee nor its loan servicer, and was thus found to be noncompliant with G.L.c. 183, §21).
With respect to any failure on Mass Housing’s part to comply strictly with the power of sale, Rogers contends that the power was not exercised by an “attorney duly authorized by a writing under seal,” citing G.L.c. 244, §14. He points to the fact that a power of attorney, authorizing a law firm to act on its behalf, was not executed until the date of the foreclosure itself.[9] Section 14, however, authorizes the power of sale to be exercised by a number of entities, including “[t]he mortgagee ... or person *73 acting in the name of such mortgagee.” Id. Here, Mass Housing, as the mortgagee, conducted the foreclosure with the assistance of attorneys who acted on its behalf. See Fairhaven Sav. Bank v. Callahan, 391 Mass. 1011, 1012 (1984) (where mortgagee conducted foreclosure with assistance of attorneys who prepared legal documents, G.L.c. 244, §14 was not violated by failure to have mortgagee’s instructions to lawyers “under seal”); Federal Nat'l Mtge. Ass’n v. Isaac, 2014 Mass. App. Div. 223, 224-225 (G.L.c. 244, §14 permits mortgagee to act through its agents to take steps necessary to foreclose without need to grant power of attorney under seal). There is nothing in the summary judgment record to indicate otherwise.

*72
continued on page 73

*73 To the extent that Rogers made out a viable defense and counterclaim relating to the HAMP modification,[10] Fannie Mae established through the affidavit of Mass Housing’s default management manager that Rogers was given a RAMP modification on November 1, 2009. Although Rogers challenged the adequacy of this averment,[11] he failed to contradict the statement or even address the HAMP modification issue in his own affidavit. Thus, there was no genuine issue of material fact with respect to Rogers’s affirmative defense and counterclaim. The trial judge properly entered judgment in favor of Fannie Mae.
Judgment affirmed.

 Rogers’s mother, Irene Rogers, passed away in February, 2012, just prior to the filing of the summary process case.

 Fannie Mae submitted documentation showing that East Boston Savings Bank notified Rogers that the servicing of his loan was being transferred to Mass Housing as of June 5, 2008. In his affidavit, Rogers acknowledged that Mass Housing was the servicer of his loan.

 The first notice was addressed to Rogers, the second to his mother, and the third to both Rogers and his mother.

 MERS initially assigned the mortgage to Mass Housing on October 26,2010, identifying the mortgage as one from Rogers to MERS. MERS executed a “confirmatory assignment of mortgage” on November 1,2010, in which it added language identifying the mortgage as one from Rogers and his mother to MERS and as one that had previously been assigned to Mass Housing. On December 14,2010, MERS executed a third and final assignment of the mortgage to Mass Housing; this assignment correctly identified the mortgage as one from Rogers and his mother to MERS, but made no mention of any previous assignment. Fannie Mae relied only on this last assignment

 Fannie Mae’s motion for summary judgment was supported by an affidavit of a “default management manager” for Mass Housing. The affidavit asserted that Mass Housing was the holder of the note at the time of the foreclosure sale on November 4, 2011, but failed to disclose how or when this came to be, and additionally failed to provide any documentation supporting any transfer of the note. Rogers moved to strike this conclusory allegation, particularly since he was also denied discovery on this point We need not address this issue (with respect to sufficiency of the affidavit or discovery), however, because the question of whether Mass Housing was the hold *70 er of the note at the time of the foreclosure sale is not relevant in this case, because the foreclosure took place prior to the decision in Eaton v. Federal Nat'l Mtge. Ass’n, 462 Mass. 569, 571 (2012) (court’s interpretation of statute requiring entity exercising power of sale to be holder of both mortgage and note has prospective application only). Nor had this case reached the appellate stage at that time. See Galiastro v. Mortgage Elec. Registration Sys., Inc., 467 Mass. 160, 167 (2014) (Eaton rule applies to all cases where issue was preserved and case was pending on appeal at time rescript in Eaton issued).

 Paragraph 22 of the mortgage instrument provided in relevant part:
If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. ...
If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law....

 On November 4,2011, the day of the foreclosure sale, Mass Housing executed a power of attorney appointing several lawyers in a law firm as its “attorneys-in-fact” in order to act on its behalf with respect to the foreclosure. A second power of attorney, *73 correcting errors in the first, was executed on December 1, 2011. Because the effective date of the second power of attorney postdated the foreclosure sale, a third power of attorney was executed on June 27,2012; that power of attorney ratified all previous actions taken by its counsel with respect to the foreclosure sale.

 In his answer, Rogers set forth several affirmative defenses and counterclaims; the only one pressed on summary judgment is the G.L.c. 93A claim, based on the HAMP modification issue. With respect to this claim, Rogers stated in his answer: (1) “The landlord is subject to G.L.c. 93A, and each of the acts stated in this Answer/ Counterclaims was unfair and/or deceptive”; and (2) “I did not get a loan modification HAMP and I qualify.”

 He challenged the statement as being “vague and general” as well as not being based on personal knowledge. Contrary to this assertion, the statement was quite specific and was based on the affiant’s knowledge of the loan in her capacity as Mass Housing’s default management manager and review of the documents, which are business records of Mass Housing. See McLaughlin v. CGU Ins. Co., 445 Mass. 815, 819-820 (2006). Although the referenced document should have been incorporated into the affidavit, it was offered in conjunction with later briefing without opposition.